IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PALOMAR SPECIALTY INSURANCE COMPANY, a California corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No.: ) |
| BERKADIA REAL ESTATE ADVISORS L.L.C.; JOHNATHAN SMITH; MAGNA PROPERTIES, INC.; and MIKE ABDALLA, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR RESCISSION AND DECLARATORY AND OTHER RELIEF**

NOW COMES Plaintiff, PALOMAR SPECIALTY INSURANCE COMPANY, by and through its attorneys, Matthew J. Kowals of Leahy, Eisenberg & Fraenkel, Ltd. for its Complaint for Rescission and Declaratory and Other Relief against Defendants BERKADIA REAL ESTATE ADVISORS L.L.C., JOHNATHAN SMITH, MAGNA PROPERTIES, INC., and MIKE ABDALLA and states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §1332 and 28 U.S.C.A. §2201 based on diversity of citizenship between the Plaintiff and Defendants.

2. The matter in controversy in this cause exceeds $75,000. The insurance policy at issue in this matter has a limit of liability of $5 million per claim, and the underlying claimants have made a multimillion dollar demand on the Insureds.

3. Venue is proper in this district pursuant to 28 U.S.C.A. §1391 because certain events giving rise to this matter occurred in this judicial district and the Defendants are subject to the personal jurisdiction of this Court.

## PARTIES

4. Plaintiff, Palomar Specialty Insurance Company ("Palomar") is an insurance company organized under the laws of the state of Oregon with a principal place of business in LaJolla, California. Therefore, Palomar is a citizen and resident of the states of Oregon and California.

5. Defendant Berkadia Real Estate Advisors L.L.C. ("Berkadia") is a Delaware limited liability company with a principal place of business in Ambler, Pennsylvania. Berkadia is solely owned by Berkadia Proprietary Holding L.L.C. The members of Berkadia Proprietary Holding L.L.C. are Berkshire Hathaway Inc. and Jefferies Financial Group, Inc. Berkshire Hathaway Inc. is a Delaware corporation with a principal place of business in Omaha, Nebraska. Jefferies Financial Group, Inc. is a New York corporation with a principal place of business in New York. Therefore, Berkadia. is a citizen and resident of the states of Delaware, Pennsylvania, Nebraska and New York.

6. Defendant Johnathan Smith ("Smith") is a citizen and resident of the state of Washington.

7. Magna Properties, Inc. ("Magna") is a corporation organized under the laws of the state of Indiana, with a principal place of business in Evansville, Indiana. Therefore, Magna is a citizen and resident of the state of Indiana. Magna is joined in this suit as a necessary party defendant.

8. Mike Abdalla is a citizen and resident of the State of Indiana. Mr. Abdalla is joined in this suit as a necessary party defendant.

## THE PALOMAR POLICY

9. On February 2, 2024, Berkadia executed a Great American Insurance Services Real Estate Related Services Errors and Omissions Renewal Application ("Application"), which was submitted to Palomar to obtain the Palomar Policy. A true and accurate copy of the Application is attached hereto as **Exhibit A.**

10. Questions 1 and 2 of the Claims Experience section contained the following inquiries:

   1. Have any claims or suits (including without limitation: any shareholder action or derivative suit; or any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) been made during the past 12 months against: (a) the Applicant; (b) its predecessors in business; (c) any subsidiary or affiliate of the Applicant; (d) any other entity proposed for coverage; or (e) any past or present partners, directors, officers, or employees of the Applicant, its predecessors in business, any subsidiary or affiliate of the Applicant, or any other entity proposed for coverage **which have not been previously reported to the Insurer**?

   2. Is the Applicant (after proper inquiry of each director, officer or partner of the Applicant) aware of any circumstances, incidents, situation, or accidents (including without limitation: shareholder action or derivative suit; or any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) that may result in a claim being made against: (a) the Applicant; (b) its predecessors in business; (c) any subsidiary or affiliate of the Applicant; (d) any other entity proposed for coverage; or (e) any past or present partners, directors, officers, or employees of the Applicant, its predecessors in business, any subsidiary or affiliate of the Applicant, or any other entity proposed for coverage **which have not been previously reported to the Insurer**?

11. Berkadia answered "yes," but represented that "such claims or suits relate to affiliates not covered under the Great American E&O policy."

12. Berkadia further checked "no" in response to the following inquiries:

   3. Is the Applicant (or any director, officer, partner or employee of the Applicant, or any other proposed insured) been involved during the past 12 months in any disputes with respect to fees or other compensation which may be due for services/products provided by the Applicant?

3

> 4. Is the Applicant (or any director, officer, partner or employee of the Applicant, or any other proposed insured) aware of any actual or alleged deficiencies, errors or omissions in work performed by the Applicant or by others for whom the Applicant is legally responsible?

13. On the Claims Experience page, the Application contains a provision that states:

> It is understood and agreed that any misrepresentation, non-disclosure, concealment, or breach of warranty in the application shall be binding upon the Applicant and each and every proposed insured under the policy whether or not the proposed insured knew of, committed, or was responsible for such misrepresentation, non-disclosures, concealment, or breach of warranty.
>
> **Warranty:**
>
> The Applicant agrees that if the information supplied on or attached to this application changes between the time this application is executed and the time that the proposed insurance policy is bound or coverage commenced, the Applicant will immediately notify the Insurer in writing of such changes; and the Insurer fully reserves its rights with respect to underwriting acceptance or denial of such changes.

14. In reliance upon the representations made in the Application, Palomar issued claims made and reported Real Estate Professional Services Errors and Omissions Insurance Policy no. CPPLREO-24-0733-00 to Berkadia for the policy period of May 12, 2024 to May 12, 2025 ("Palomar Policy"). The Palomar Policy has limits of liability of $5,000,000 per claim and in the aggregate. The Variable Deductible Endorsement of the Policy provides for a $50,000 deductible for claims by reason of a Wrongful Act in the performance of Real Estate Professional Services on property located in a state other than California. A true and accurate copy of the Palomar Policy is attached hereto as **Exhibit B.**

15. As amended by the Knowledge & Claim Reporting Amendatory Endorsement, the Insuring Agreement of the Palomar Policy states, in pertinent part, as follows:

> **Section I. Insuring Agreement**
>
> The **Company** will pay on behalf of an **Insured** those sums in excess of the

deductible, up to the applicable **Limit of Liability**, that the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** as a result of a **Claim** first made against the **Insured** during the **Policy Period** or any applicable **Extended Reporting Period** by reason of a **Wrongful Act**, including **Personal Injury,** in the performance of **Real Estate Professional Services** by or for the **Named Insured,** including any **Fair Housing Claims, Fungi Claims, Lock-Box claims** or **Open House Claims,** provided that:

- A.  no such **Wrongful Act,** or **Related Wrongful Act**, was committed prior to the **Retroactive Date;**

- B.  prior to the inception date of the Policy issued by the **Company,** no **Insured's** partners, principals, officers, directors, members, managing brokers or risk managers had a basis to believe that any circumstances, dispute, situation, or incident might reasonably be expected to be the basis of a **Claim;** and

- C.  the **Claim** must be reported in writing to the **Company** during the **Policy Period** unless an **Extended Reporting Period** applies.

\*   \*   \*

16. **Claim** is defined as: in Section II. Definitions (C) as:

    (1)  a written demand for money or services received by an **Insured**; or
    (2)  a civil proceeding in a court of law, or arbitration proceeding, against an **Insured**, commenced by the service of summons or receipt of an arbitration demand arising out of an alleged **Wrongful Act** in the performance of **Real Estate Professional Services.**

17. **Damages** are defined in Section II. Definitions (I) as any monetary judgment, or award which an **Insured** is legally obligated to pay, including punitive or exemplary damages where insurable by law, and pre-judgment and post-judgment interest.  **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf provided, however, **Damages** do not include:

    (1)  the return, restitution, reduction, compromise or refund of fees, commissions, expenses or costs for **Real Estate Professional Services** performed or to be performed by an **Insured** and injuries that are a consequence of any fees, commissions, expenses or costs charged by an **Insured**;

\*   \*   \*

18. **Wrongful Act** is defined in Section II. Definitions (MM), in pertinent part, as:

    (1) any actual or alleged negligent act, error or omission committed or allegedly committed by any **Insured** solely in connection with the rendering of **Real Estate Professional Services,** . . .

    \* \* \*

19. As amended by the General Amendatory Endorsement of the Policy, Exclusion A of the Policy provides that the Policy does not apply to **Claims** arising directly or indirectly out of:

    A. any dishonest, intentionally wrongful, fraudulent, criminal or malicious acts or omission committed or allegedly committed by an **Insured**. The **Company** will provide the Insured with a defense of such **Claim** unless and until a final adjudication or finding of fact against, or admission by, such **Insured** establishes that such Insured committed such dishonest, intentionally wrongful, fraudulent, criminal or malicious at or omission. Such defense will not waive any of the **Company's** rights under this Policy. Upon establishing, by final and non-appealable judgment or adjudication, that an **Insured** has committed a dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission, the **Company** will have the right to seek recovery of any **Claim Expenses** incurred on behalf of any Insured that committed such acts or omissions.

20. Exclusion E. of the Policy provides that the Policy does not apply to **Claims** arising directly or indirectly out of:

    (1) disputes involving an **Insured'**s fees, commissions, charges or rebates;
    (2) conversion, misappropriation, commingling or defalcation of funds, money, currency, negotiable instruments or any other tangible or intangible property;
    (3) gaining of any personal profit or advantage to which an **Insured is** not legally entitled;
    (4) disputes involving the failure of any person(s) or entity(ies) to collect, safeguard, pay or disburse commissions, finder's fees, deposits, escrow funds, tax funds or other funds or sums of money;
    (5) theft of funds while in the care, custody or control of an **Insured**, or while being transferred by, or at the direction of, an **Insured** or on an **Insured's** behalf;

21. Exclusion G of the Policy provides that the Policy does not apply to **Claims** arising directly or indirectly out of:

6

      G.      the actual or attempted sale, purchase, leasing, appraisal, or **Property Manager** services of property **Developed**, **Constructed** or owned by:

      (1)      any **Insured**;

      (2)      any entity in which any **Insured** had a financial or a contemplated financial interest;

      (3)      any entity with a financial interest or a contemplated financial interest in the **Named Insured**; or

      (4)      any entity under the same financial control as the **Named Insured**;

provided that such financial interest, contemplated financial interest, or financial control existed at the time of the **Wrongful Act** giving rise to the **Claim**;

## UNDERLYING MAGNA CLAIM

22.      In December of 2021, Berkadia entered into a Listing Agreement with Magna related to the sale of five Indiana properties owned by Magna. At the time the Agreement was signed, Defendant Smith was a Senior Director at Berkadia, and a signer of the Agreement on Berkadia's behalf.

23.      Magna subsequently entered into agreements for the sale of the properties to TableRock Capital L.L.C., though individual L.L.C.s Magna created for the purchases including TRC Grand Oak, L.L.C., TRC East Lodge L.L.C., TRC Briarwick L.L.C., and TRC Fox Acres L.L.C. (hereinafter, collectively "Magna Entities"). TableRock purchased the properties through its own individual L.L.C.s created for each purchase, including Grand Oak Community L.L.C., Briarwick Apartments L.L.C., and Fox Acres Apartments L.L.C., (hereinafter, "TableRock Entities") and also formed Indiana Properties L.L.C. to hold the purchased properties.

24.      On September 27, 2022, TableRock terminated two of the sales contracts (Grand Oak and East Lodge), based upon alleged breaches of contract by Magna, and demanded the return of the

earnest monies. Magna is alleged to have refused to recognize and accept TableRock's termination and refused to authorize the bank, First American to release the earnest money to TableRock.

25. On November 1, 2022, the TableRock Entities filed civil action no. 82D07-2211-PL-005133 in the Indiana Commercial Court of Vandenburgh Superior Court, Vanderburgh County, Indiana ("TableRock Lawsuit"). The Defendants include the Magna Entities, and nominal Defendant First American Title Insurance Company, holder of earnest money and other deposits in connection with the real estate sales.

26. In the lawsuit, the TableRock Entities assert four causes of action against the Magna Entities: Declaratory Judgment- Return of TRC Grand Oak's Earnest Money (Count I); Declaratory Judgment – Return of TRC East Lodge's Earnest Money (Count II); Breach of Contract - Grand Oak Contract (Count III); and Breach of Contract- East Lodge Contract (Count IV).

27. On January 2, 2023, the Magna Entities filed Counterclaims, Crossclaims and a Third Party Complaint, asserting causes of action for Declaratory Relief (Count I); Breach of Contract (Count II); Specific Performance (Count III); Fraud (Count IV); Fraud in the Inducement; (Count V); Fraudulent Concealment (Count VI); Declaratory Judgment – Replacement of Reserve Funds (Count VIII); Conversion (Count VI); and Unjust Enrichment (Count X).

28. On April 10, 2023, Magna's counsel issued a subpoena to Berkadia in connection with the TableRock Lawsuit, seeking documents and communications related to the properties, transactions, and Berkadia's communications with both TableRock and Magna. Berkadia retained Baker, Donelson, Bearman, Caldwell, & Berkowitz, PC ("Baker Donelson") as counsel.

29. On April 13, 2023, the subpoena was served upon Berkadia. On April 17, 2023, Berkadia terminated Smith's employment relationship.

30. On October 26, 2023, Magna issued a deposition subpoena directed to Defendant

8

Smith. Baker, Donelson represented Smith at the deposition, which occurred on December 4, 2023, and lasted approximately seven hours. In the deposition, Smith was questioned regarding his allegedly undisclosed prior and current relationship with TableRock, and Smith was also presented with purported evidence of his equity interest in two of the TableRock entities, despite previously denying said interest.

31. By letter dated May 13, 2024, Magna, through it is counsel, made a monetary demand upon Berkadia and Smith. A true and accurate copy of the demand letter is attached hereto as **Exhibit C.** In the letter, Magna alleges that Berkadia and Smith failed to disclose Smith's prior employment and financial benefits related to the TableRock transactions; failed to act in Magna's best interests; failed to disclose Smith's personal investment in the properties and/or financial benefit conferred by TableRock; failed to exercise due diligence with regard to the portfolio structure of the sale or HUD replacement reserve; and failed to maintain confidentiality or exercise discretion with regarding to disclosure of materials and information to TableRock, to the detriment of Magna.

32. On May 28, 2024, Berkadia first reported the claim and circumstances to Berkadia.

33. On August 1, 2024, Magna Properties Inc. and Mike Abdulla filed an Arbitration Demand against Berkadia and Smith with the American Arbitration Association. A true and accurate copy of the Arbitration Demand is attached hereto as **Exhibit D.**

34. In the Demand, Magna alleges that on or about December 21 and 22, 2021, Magna granted Berkadia and Smith the right to offer the five Indiana Properties for sale and explained its intent that the Indiana Properties be sold as a portfolio sale to a single buyer. Magna alleges that despite receiving other offers, Smith and Magna pushed Berkadia to sell the Indiana Properties to TableRock Capital L.L.C. Magna further alleges that after entering into the purchase agreements, Smith and Berkadia encouraged Magna to offer TableRock extensive price discounts, and later

9

pushed Magna to sell two of the properties for a reduced price.

35.  Magna alleges that it learned through the discovery in its litigation with TableRock that Smith had an undisclosed dual agency and personal relationship with TableRock, had previously been an employee of TableRock, and still had a TableRock email.  Magna also alleges that although it hired Smith and Berkadia to act as Magna's exclusive agent, Smith and Berkadia were actually working as an undisclosed dual agent for both Magna and TableRock.  Magna alleges that Berkadia and Smith encouraged Magna to take actions that were not in its best interest, and which ultimately caused material damages to Magna.

36.  Magna further asserts that it learned that Smith was obtaining an undisclosed financial interest from TableRock's purchase of the Indiana Properties, and obtained a finder's fee.  Magna alleges that that documents obtained in the litigation listed Smith as an equity owner in the limited liability company that TableRock created to hold the Indiana Properties, and reflect a "finder's fee" paid to Smith by TableRock, which was evidenced in deposition testimony of TableRock's owner and by Smith's signature on the Operating Agreement for the TableRock holding company.

37.  Magna alleges that Berkadia and Smith are liable for Breach of Contract, Fraud, Constructive Fraud, Breach of the Duty of Good Faith, Breach of the Duty to Disclose, Negligence, Failure to Disclose Dual Agency and Breaches of Real Estate Statutes.

38.  Magna seeks disgorgement of fees, the loss of value of the remaining property that did not close, including increased expenses and repairs costs incurred to continue to operate those properties, losses associated with the inability to access the HUD reserve funds, insurance, and attorney's fees.

39.  By letter dated August 9, 2024, Jonathan Smith, through his counsel, Kluever Law Group, tendered the Demand for defense and indemnity under the Palomar Policy. By separate letters

dated October 7, 2024, Palomar agreed to defend Berkadia and Smith, subject to a reservation of rights. True and accurate copies of the Reservation of Rights letters are attached hereto as **Exhibit E.**

40. Palomar contends it has no obligation to defend or indemnify Berkadia or Smith against the Magna Claim. Berkadia and Smith contend that Palomar has an obligation to defend and indemnify him against the claim. As a result, a present justiciable controversy exists regarding Palomar's rights and obligations, if any, with regard to these claims.

## COUNT I
## (RESCISSION)

41. Palomar adopts and incorporates by reference paragraphs 1-40 as though set forth herein as this paragraph 41.

42. On or after February 2, 2024, Berkadia submitted an application for insurance to Palomar.

43. Despite Berkadia's knowledge of all of the foregoing events and circumstances, Berkadia did not disclose them to Palomar in response to specific inquiries regarding any circumstances that might result in a claim being made against Berkadia or any of its past or present partners, directors, officers of employees, or any disputes regarding fees or compensation.

44. If Palomar was aware of these circumstances, Palomar would not have issued the same Policy to Berkadia. Accordingly, Palomar is entitled to rescind the policy of insurance it issued to Berkadia based upon material misrepresentations in the application.

45. Palomar agrees to tender the premium to Berkadia upon a judgment of rescission.

WHEREFORE, Palomar prays that this Honorable Court enter a judgment of rescission of Policy no. CPPLREO-24-0733-00 and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT II

### (DECLARATORY JUDGMENT - INSURING AGREEMENT)

46. Palomar adopts and incorporates by reference paragraphs 1- 45 as though set forth herein as this paragraph 46.

47. The Insuring Agreement of the Palomar Policy states that the insurance applies to a Claim first made and reported during the Policy Period only if, prior to the inception of the Policy, no Insured partners, principals, officers, directors, members, managing brokers or risk managers had a basis to believe that any circumstances, dispute, situation, or incident might reasonably be expected to be the basis of a Claim.

48. Prior to inception of the Palomar Policy, both Smith and Berkadia knew, *inter alia,* that:

   a. Magna terminated Berkadia's services as its broker;

   b. Magna believed that Berkadia and/or Smith were acting in favor of TableRock and not Magna;

   c. TableRock and Magna were engaged in litigation with each other related to the real estate transactions;

   d. Magna subpoenaed Berkadia's documents and communications related to the properties, transactions, and obtained seven hours of Smith's deposition testimony;

  e. Magna contended that Smith had a prior undisclosed relationship with TableRock and had conflicting loyalties;

  f. Magna contended that Smith obtained finders fees and equity interests in TableRocks' purchasing LLCs;

  g. Smith denied any equity interest, but was presented with documents in his deposition evidencing an equity interest in two TableRock properties.

49. These and all of the foregoing constituted circumstances, a dispute, situation or incident that might reasonably be expected to be the basis of a Claim.

50. Accordingly, even assuming the Policy were not void, the Magna Claim is outside the scope of coverage provided by the Policy, and Palomar has no obligation to defend or indemnify any Insured against this Claim.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Berkadia or Smith against the Magna Claim, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT III

### (DECLARATORY JUDMENT - SCOPE OF DAMAGES)

51. Palomar adopts and incorporates by reference paragraphs 1- 50 as though set forth herein as this paragraph 49.

52. The Insuring Agreement of the Palomar Policy provides coverage only for those amounts the Insured becomes legally obligated to pay as "Damages" as a result of a covered claim. "Damages" do not include the return, restitution, reduction, compromise or refund of fees,

commissions, expenses or costs for services performed or to be performed by an Insured, nor injuries that are a consequence of any fees, commissions, expenses or costs charged by an **Insured**;

53. In the Arbitration Demand, Magna seeks a disgorgement of fees. Even assuming the Policy were not void, Palomar has no obligation to defend or indemnify any Insured for the return, restitution or refund of any fees or commissions, or disgorgement of fees.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Berkadia or Smith against the Magna Claim, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT IV

### (EXCLUSION E)

54. Palomar adopts and incorporates by reference paragraphs 1- 53 as though set forth herein as this paragraph 54.

55. Pursuant to Exclusion E of the Palomar Policy, the Policy does not apply to any claims arising directly or indirectly out of any disputes involving an Insured's fees, commissions, charges or rebates, or the gaining of any profit or advantage to which any Insured is not legally entitled.

56. Magna alleges that Smith improperly obtained an undisclosed financial interest and finder's fees for TableRock's purchases of the Indiana properties from Magna, and seeks a disgorgement of fees.

57. Accordingly, even if the Policy were not void and the claim were otherwise within the scope of the Insuring Agreement. The Claim is excluded in whole or in part by Exclusion E and Palomar can have no obligation to defend or Indemnify any Insured against the Magna Claim.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Berkadia or Smith against the Magna Claim, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT V

### (EXCLUSION G)

58. Palomar adopts and incorporates by reference paragraphs 1- 57 as though set forth herein as this paragraph 58.

59. Pursuant to Exclusion G of the Palomar Policy, the Policy does not apply to any claims arising directly or indirectly out of or in any way alleging the actual or attempted purchase of property owned by any entity in which any Insured had a financial or contemplated financial interest.

60. Magna alleges that Smith was obtaining an undisclosed financial interest from TableRock's purchase of the Indiana Properties and obtained such interest in the form of equity ownership in the TableRock entities created to purchase and hold the properties.

61. Accordingly, even if the Policy were not void and the claim were otherwise within the scope of the Insuring Agreement. The Claim is excluded in whole or in part by Exclusion G and Palomar can have no obligation to defend or Indemnify any Insured against the Magna Claim.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Berkadia or Smith against the Magna Claim, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT VI

### (EXCLUSION A)

62. Palomar adopts and incorporates by reference paragraphs 1- 61 as though set forth herein as this paragraph 62.

63. Pursuant to Exclusion A of the Palomar Policy, Palomar has no obligation to indemnify any Insured for any claims arising directly or indirectly out of any dishonest, intentionally wrongful, or fraudulent acts or omission allegedly committed by an Insured.

64. Magna alleges that Smith and Berkadia were working as undisclosed dual agents, had an undisclosed prior relationship with TableRock, obtained an undisclosed financial interest in TableRock, and assert claims against them for fraud, constructive, breach of the duty of good faith, and failures to disclose. Accordingly, even if the Policy were not void and the claim were otherwise within the scope of the Insuring Agreement, all or part of the claim is excluded by Exclusion A.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Berkadia or Smith against the Magna Claim, and grant such other and further relief as this Court deems just and proper, including fees and costs.

## COUNT VII

### (REIMBURSEMENT OF DEFENSE COSTS)

65. Palomar adopts and incorporates by reference paragraphs 1- 64 as though set forth herein as this paragraph 65.

66. Section X. General Conditions (N) of the Palomar Policy contains the following provision:

> **N.     Reimbursement**
>
> While the Company has no duty to do so, if the Company pays Damages and Claim Expenses:
>
> (1)     within the amount of the applicable deductible, or
> (2)     in excess of the applicable limit of liability, or
> (3)     under a reservation of rights to seek reimbursement, and it is determined that the Company is entitled to such reimbursement,

16

All **Insureds** shall be jointly and severally liable to the **Company** for such amounts. Upon written demand, the **Insured** shall repay such amounts to the **Company** within thirty (30) days. Failure to pay any amount indicated may lead to termination of this Policy.

67. By the reservation of rights correspondence dated October 7, 2024, Palomar agreed to pay the reasonable and necessary costs of independent counsel to defend Berkadia and Smith against the Magna Claim, subject to a full reservation of rights, including the right to seek reimbursement of any defense costs or expenses paid by Palomar.

68. Accordingly, in the event this Court enters judgment in favor of Plaintiff with respect to its claim for rescission and/or declaratory relief, Plaintiff is entitled to reimbursement of any and all Claims Expenses paid by Palomar.

WHEREFORE, Palomar prays that this Honorable Court declare that Palomar has no obligation to defend or indemnify Berkadia or Smith against the Magna Claim, and grant such other and further relief as this Court deems just and proper, including fees and costs.

        Respectfully submitted,

        PALOMAR SPECIALTY INSURANCE COMPANY


        By: /s/Matthew J. Kowals
           Attorney for Plaintiff


Matthew J. Kowals, 28428-71
**LEAHY, EISENBERG & FRAENKEL, LTD.**
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
Tel.: (312) 368-4554
Email: mjk@lefltd.com
Firm ID No. 45875