# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PALOMAR SPECIALTY INSURANCE COMPANY, a California corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:25-cv-01497-JRS-MJD |
| BERKADIA REAL ESTATE ADVISORS L.L.C.; JOHNATHAN SMITH; MAGNA PROPERTIES, INC.; and MIKE ABDALLA | ) ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANT MAGNA PROPERTIES, INC., AND MIKE ABDALLA'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendants, Magna Properties, Inc. ("Magna"), and Mike Abdalla ("Abdalla") (together, the "Magna Parties"), by counsel, for their Answer and Affirmative Defenses to Plaintiff Palomar Specialty Insurance Company ("Plaintiff") Complaint for Recission and Declaratory and Other Relief ("Complaint"), state the following:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §1332 and 28 U.S.C.A. §2201 based on diversity of citizenship between the Plaintiff and Defendants.

**ANSWER:**  Admitted.

2.    The matter in controversy in this cause exceeds $75,000. The insurance policy at issue in this matter has a limit of liability of $5 million per claim, and the underlying claimants have made a multimillion dollar demand on the Insureds.

**ANSWER:**   The Magna Parties admit that the amount in controversy in this cause exceeds $75,000. The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in the foregoing paragraph and therefore deny the same.

3.    Venue is proper in this district pursuant to 28 U.S.C.A. §1391 because certain events giving rise to this matter occurred in this judicial district and the Defendants are subject to the personal jurisdiction of this Court.

**ANSWER:**   Admitted.

**PARTIES**

4.    Plaintiff, Palomar Specialty Insurance Company ("Palomar") is an insurance company organized under the laws of the state of Oregon with a principal place of business in LaJolla, California. Therefore, Palomar is a citizen and resident of the states of Oregon and California.

**ANSWER:**   The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

5.    Defendant Berkadia Real Estate Advisors L.L.C. ("Berkadia") is a Delaware limited liability company with a principal place of business in Ambler, Pennsylvania. Berkadia is solely owned by Berkadia Proprietary Holding L.L.C. The members of Berkadia Proprietary Holding L.L.C. are Berkshire Hathaway Inc. and

Jefferies Financial Group, Inc. Berkshire Hathaway Inc. is a Delaware corporation with a principal place of business in Omaha, Nebraska. Jefferies Financial Group, Inc. is a New York corporation with a principal place of business in New York. Therefore, Berkadia. is a citizen and resident of the states of Delaware, Pennsylvania, Nebraska and New York.

**ANSWER:** The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

6.    Defendant Johnathan Smith ("Smith") is a citizen and resident of the state of Washington.

**ANSWER:** The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

7.    Magna Properties, Inc. ("Magna") is a corporation organized under the laws of the state of Indiana, with a principal place of business in Evansville, Indiana. Therefore, Magna is a citizen and resident of the state of Indiana. Magna is joined in this suit as a necessary party defendant.

**ANSWER:** The Magna Parties admit that Magna is a corporation organized under the laws of the state of Indiana. The Magna Parties deny that Magna's principal place of business is located in Evansville, Indiana. Answering further, the Magna Parties state that Magna's principal place of business is Indianapolis, Indiana. The remaining allegations constitute legal conclusions to which no response

by the Magna Parties is required, but if a response is required, the Magna Parties deny the remaining allegations in Paragraph 7.

8.     Mike Abdalla is a citizen and resident of the State of Indiana. Mr. Abdalla is joined in this suit as a necessary party defendant.

**ANSWER:**  Denied. Answering further, the Magna Parties state that Mike Abdalla is a citizen and resident of the State of Florida. The remaining allegation is a legal conclusion to which no response by the Magna Parties is required, but if a response is required, the Magna Parties deny the remaining allegations in Paragraph 8.

## THE PALOMAR POLICY

9.     On February 2, 2024, Berkadia executed a Great American Insurance Services Real Estate Related Services Errors and Omissions Renewal Application ("Application"), which was submitted to Palomar to obtain the Palomar Policy. A true and accurate copy of the Application is attached hereto as **Exhibit A**.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

10.     Questions 1 and 2 of the Claims Experience section contained the following inquiries:

    1. Have any claims or suits (including without limitation: any shareholder action or derivative suit; or any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) been made during the past 12 months against: (a) the Applicant; (b) its predecessors in business; (c) any subsidiary or affiliate of the Applicant; (d) any other entity proposed for coverage; or (e) any past or present partners, directors, officers, or employees

of the Applicant, its predecessors in business, any subsidiary or affiliate of the Applicant, or any other entity proposed for coverage **which have not been previously reported to the Insurer**?

2. Is the Applicant (after proper inquiry of each director, officer or partner of the Applicant) aware of any circumstances, incidents, situation, or accidents (including without limitation: shareholder action or derivative suit; or any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) that may result in a claim being made against: (a) the Applicant; (b) its predecessors in business; (c) any subsidiary or affiliate of the Applicant; (d) any other entity proposed for coverage; or (e) any past or present partners, directors, officers, or employees of the Applicant, its predecessors in business, any subsidiary or affiliate of the Applicant, or any other entity proposed for coverage **which have not been previously reported to the Insurer**?

**ANSWER:**    The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

11.    Berkadia answered "yes," but represented that "such claims or suits relate to affiliates not covered under the Great American E&O policy."

**ANSWER:**    The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

12.    Berkadia further checked "no" in response to the following inquiries:

3. Is the Applicant (or any director, officer, partner or employee of the Applicant, or any other proposed insured) been involved during the past 12 months in any disputes with respect to fees or other compensation which may be due for services/products provided by the Applicant?

4. Is the Applicant (or any director, officer, partner or employee of the Applicant, or any other proposed insured) aware of any actual or alleged deficiencies, errors or omissions in work performed by the Applicant or by others for whom the Applicant is legally responsible?

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

13.    On the Claims Experience page, the Application contains a provision that states:

> It is understood and agreed that any misrepresentation, non-disclosure, concealment, or breach of warranty in the application shall be binding upon the Applicant and each and every proposed insured under the policy whether or not the proposed insured knew of, committed, or was responsible for such misrepresentation, non-disclosures, concealment, or breach of warranty.

> **Warranty:**

> The Applicant agrees that if the information supplied on or attached to this application changes between the time this application is executed and the time that the proposed insurance policy is bound or coverage commenced, the Applicant will immediately notify the Insurer in writing of such changes; and the Insurer fully reserves its rights with respect to underwriting acceptance or denial of such changes.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

14.    In reliance upon the representations made in the Application, Palomar issued claims made and reported Real Estate Professional Services Errors and Omissions Insurance Policy no. CPPLREO-24-0733-00 to Berkadia for the policy period of May 12, 2024 to May 12, 2025 ("Palomar Policy"). The Palomar Policy has limits of liability of $5,000,000 per claim and in the aggregate. The Variable

6

Deductible Endorsement of the Policy provides for a $50,000 deductible for claims by reason of a Wrongful Act in the performance of Real Estate Professional Services on property located in a state other than California. A true and accurate copy of the Palomar Policy is attached hereto as **Exhibit B**.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

15.  As amended by the Knowledge & Claim Reporting Amendatory Endorsement, the Insuring Agreement of the Palomar Policy states, in pertinent part, as follows:

> **Section I. Insuring Agreement**
>
> The **Company** will pay on behalf of an **Insured** those sums in excess of the deductible, up to the applicable **Limit of Liability**, that the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** as a result of a **Claim** first made against the **Insured** during the **Policy Period** or any applicable **Extended Reporting Period** by reason of a **Wrongful Act**, including **Personal Injury**, in the performance of **Real Estate Professional Services** by or for the **Named Insured**, including any **Fair Housing Claims**, **Fungi Claims**, **Lock-Box claims** or **Open House Claims**, provided that:
>
> a.  no such **Wrongful Act**, or **Related Wrongful Act**, was committed prior to the **Retroactive Date;**
>
> b.  prior to the inception date of the Policy issued by the **Company**, no **Insured's** partners, principals, officers, directors, members, managing brokers or risk managers had a basis to believe that any circumstances, dispute, situation, or incident might reasonably be expected to be the basis of a **Claim**; and
>
> c.  the Claim must be reported in writing to the **Company** during the **Policy Period** unless an **Extended Reporting Period** applies.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

16.    **Claim** is defined as: in Section II. Definitions (C) as:

(1) a written demand for money or services received by an **Insured**; or

(2) a civil proceeding in a court of law, or arbitration proceeding, against an **Insured**, commenced by the service of summons or receipt of an arbitration demand arising out of an alleged **Wrongful Act** in the performance of **Real Estate Professional Services.**

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

17.    **Damages** are defined in Section II. Definitions (I) as any monetary judgment, or award which an **Insured** is legally obligated to pay, including punitive or exemplary damages where insurable by law, and pre-judgment and post-judgment interest. **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf provided, however, **Damages** do not include:

(1) the return, restitution, reduction, compromise or refund of fees, commissions, expenses or costs for **Real Estate Professional Services** performed or to be performed by an **Insured** and injuries that are a consequence of any fees, commissions, expenses or costs charged by an **Insured**;

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

18.    **Wrongful Act** is defined in Section II. Definitions (MM), in pertinent part, as:

> **(1)** any actual or alleged negligent act, error or omission committed or allegedly committed by any **Insured** solely in connection with the rendering of **Real Estate Professional Services, . . .**

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

19.    As amended by the General Amendatory Endorsement of the Policy, Exclusion A of the Policy provides that the Policy does not apply to **Claims** arising directly or indirectly out of:

> A. any dishonest, intentionally wrongful, fraudulent, criminal or malicious acts or omission committed or allegedly committed by an Insured. The **Company** will provide the **Insured** with a defense of such **Claim** unless and until a final adjudication or finding of fact against, or admission by, such **Insured** establishes that such Insured committed such dishonest, intentionally wrongful, fraudulent, criminal or malicious at or omission. Such defense will not waive any of the **Company's** rights under this Policy. Upon establishing, by final and non-appealable judgment or adjudication, that an **Insured** has committed a dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission, the **Company** will have the right to seek recovery of any **Claim Expenses** incurred on behalf of any Insured that committed such acts or omissions.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

20.    Exclusion E. of the Policy provides that the Policy does not apply to **Claims** arising directly or indirectly out of:

> (1)    disputes involving an **Insured's** fees, commissions, charges or

rebates;

(2)     conversion, misappropriation, commingling or defalcation of funds, money, currency, negotiable instruments or any other tangible or intangible property;

(3)     gaining of any personal profit or advantage to which an **Insured is** not legally entitled;

(4)     disputes involving the failure of any person(s) or entity(ies) to collect, safeguard, pay or disburse commissions, finder's fees, deposits, escrow funds, tax funds or other funds or sums of money;

(5)     theft of funds while in the care, custody or control of an **Insured**, or while being transferred by, or at the direction of, an **Insured** or on an **Insured's** behalf;

**ANSWER:** The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

21.     Exclusion G of the Policy provides that the Policy does not apply to **Claims** arising directly or indirectly out of:

G. the actual or attempted sale, purchase, leasing, appraisal, or **Property Manager** services of property **Developed**, **Constructed** or owned by:

(1)     any **Insured**;

(2)     any entity in which any Insured had a financial or a contemplated financial interest;

(3)     any entity with a financial interest or a contemplated financial interest in the **Named Insured**; or

(4)     any entity under the same financial control as the **Named Insured**;

provided that such financial interest, contemplated financial interest, or financial control existed at the time of the **Wrongful Act** giving rise to the **Claim**;

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

## UNDERLYING MAGNA CLAIM

22.    In December of 2021, Berkadia entered into a Listing Agreement with Magna related to the sale of five Indiana properties owned by Magna. At the time the Agreement was signed, Defendant Smith was a Senior Director at Berkadia, and a signer of the Agreement on Berkadia's behalf.

**ANSWER:**   The Magna Parties admit that Magna entered into a document titled "Exclusive Listing Agreement" ("Listing Agreement"), which was last signed on December 22, 2021, with respect to five properties identified in the Listing Agreement. The Magna Parties further admit that Defendant Smith signed the Listing Agreement. The Listing Agreement speaks for itself and must be read as a whole. The Magna Parties deny that the foregoing paragraph contains a complete and accurate characterization of the Listing Agreement. The Magna Parties lack knowledge or information sufficient to form a belief about Defendant Smith's title at the time of signing the Listing Agreement. The Magna Parties deny the remaining allegations in the foregoing paragraph.

23.    Magna subsequently entered into agreements for the sale of the properties to TableRock Capital L.L.C., though individual L.L.C.s Magna created for the purchases including TRC Grand Oak, L.L.C., TRC East Lodge L.L.C., TRC Briarwick L.L.C., and TRC Fox Acres L.L.C. (hereinafter, collectively "Magna Entities"). TableRock purchased the properties through its own individual L.L.C.s

created for each purchase, including Grand Oak Community L.L.C., Briarwick Apartments L.L.C., and Fox Acres Apartments L.L.C., (hereinafter, "TableRock Entities") and also formed Indiana Properties L.L.C. to hold the purchased properties.

**ANSWER:**    Denied. Answering further, the Magna Parties state that Grand Oak Community, LLC, Briarwick Apartments, LLC, and Fox Acres Apartments, LLC are the seller entities that owned the properties subject to the Listing Agreement. Answering further, the Magna Parties state that TRC Grand Oak, LLC, TRC East Lodge LLC, TRC Briarwick LLC, and TRC Fox Acres LLC are affiliated with TableRock Capital L.L.C., not with the Magna Parties, and were the entities formed by TableRock to purchase the properties subject to the Listing Agreement. As a result, the Magna Parties deny those subsequent paragraphs herein utilizing the defined terms "Magna Entities" and "TableRock Entities" as factually inaccurate.

24.    On September 27, 2022, TableRock terminated two of the sales contracts (Grand Oak and East Lodge), based upon alleged breaches of contract by Magna, and demanded the return of the earnest monies. Magna is alleged to have refused to recognize and accept TableRock's termination and refused to authorize the bank, First American to release the earnest money to TableRock.

**ANSWER:**    The Magna Parties admit that on or about September 27, 2022, the TableRock buyer entities sent a notice of termination to the seller entities attempting to terminate the purchase agreements for the Grand Oak and East Lodge properties. The Magna Parties further admit that the seller entities dispute the

allegations made in the termination notice. The Magna Parties deny the remaining allegations in the foregoing paragraph.

25.    On November 1, 2022, the TableRock Entities filed civil action no. 82D07-2211-PL-005133 in the Indiana Commercial Court of Vandenburgh Superior Court, Vanderburgh County, Indiana ("TableRock Lawsuit"). The Defendants include the Magna Entities, and nominal Defendant First American Title Insurance Company, holder of earnest money and other deposits in connection with the real estate sales.

**ANSWER:**    The Magna Parties admit that a lawsuit is currently pending in the Indiana Commercial Court of Vanderburgh Superior Court under Cause No. 82D07-2211-PL-005133. The Magna Parties deny the remaining allegations contained in the foregoing paragraph.

26.    In the lawsuit, the TableRock Entities assert four causes of action against the Magna Entities: Declaratory Judgment- Return of TRC Grand Oak's Earnest Money (Count I); Declaratory Judgment – Return of TRC East Lodge's Earnest Money (Count II); Breach of Contract - Grand Oak Contract (Count III); and Breach of Contract- East Lodge Contract (Count IV).

**ANSWER:**    Denied.

27.    On January 2, 2023, the Magna Entities filed Counterclaims, Crossclaims and a Third Party Complaint, asserting causes of action for Declaratory Relief (Count I); Breach of Contract (Count II); Specific Performance (Count III); Fraud (Count IV); Fraud in the Inducement; (Count V); Fraudulent Concealment

(Count VI); Declaratory Judgment – Replacement of Reserve Funds (Count VIII); Conversion (Count VI); and Unjust Enrichment (Count X).

**ANSWER:**  Denied.

28.    On April 10, 2023, Magna's counsel issued a subpoena to Berkadia in connection with the TableRock Lawsuit, seeking documents and communications related to the properties, transactions, and Berkadia's communications with both TableRock and Magna. Berkadia retained Baker, Donelson, Bearman, Caldwell, & Berkowitz, PC ("Baker Donelson") as counsel.

**ANSWER:**   Denied. Answering further, the Magna Parties state that Plaintiff defines "Magna" as "Magna Properties, Inc.," which entity is not a party to the TableRock Lawsuit and has issued no subpoenas in connection therewith.

29.    On April 13, 2023, the subpoena was served upon Berkadia. On April 17, 2023, Berkadia terminated Smith's employment relationship.

**ANSWER:**   The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

30.    On October 26, 2023, Magna issued a deposition subpoena directed to Defendant Smith. Baker, Donelson represented Smith at the deposition, which occurred on December 4, 2023, and lasted approximately seven hours. In the deposition, Smith was questioned regarding his allegedly undisclosed prior and current relationship with TableRock, and Smith was also presented with purported

evidence of his equity interest in two of the TableRock entities, despite previously denying said interest.

**ANSWER:**    The Magna Parties admit that the deposition of Smith was taken in the lawsuit. The transcript of the deposition is a written document which speaks for itself and must be read in its entirety, and the Magna Parties deny any allegation inconsistent with the transcript. The Magna Parties further deny the remaining allegations contained in Paragraph 30 of the Complaint.

31.    By letter dated May 13, 2024, Magna, through it is counsel, made a monetary demand upon Berkadia and Smith. A true and accurate copy of the demand letter is attached hereto as Exhibit C. In the letter, Magna alleges that Berkadia and Smith failed to disclose Smith's prior employment and financial benefits related to the TableRock transactions; failed to act in Magna's best interests; failed to disclose Smith's personal investment in the properties and/or financial benefit conferred by TableRock; failed to exercise due diligence with regard to the portfolio structure of the sale or HUD replacement reserve; and failed to maintain confidentiality or exercise discretion with regarding to disclosure of materials and information to TableRock, to the detriment of Magna.

**ANSWER:**    The Magna Parties admit that Exhibit C is a true and accurate copy of a letter dated May 13, 2024, sent by the Magna Parties to Berkadia Real Estate Advisors LLC and Jonathan Smith. Exhibit C speaks for itself and must be read in its entirety. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of Exhibit C.

32.     On May 28, 2024, Berkadia first reported the claim and circumstances to Berkadia.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

33.     On August 1, 2024, Magna Properties Inc. and Mike Abdulla filed an Arbitration Demand against Berkadia and Smith with the American Arbitration Association. A true and accurate copy of the Arbitration Demand is attached hereto as Exhibit D.

**ANSWER:**  Admitted, except that the Magna Parties state that the correct spelling of "Mike Abdulla" is "Mike Abdalla."

34.     In the Demand, Magna alleges that on or about December 21 and 22, 2021, Magna granted Berkadia and Smith the right to offer the five Indiana Properties for sale and explained its intent that the Indiana Properties be sold as a portfolio sale to a single buyer. Magna alleges that despite receiving other offers, Smith and Magna pushed Berkadia to sell the Indiana Properties to TableRock Capital L.L.C. Magna further alleges that after entering into the purchase agreements, Smith and Berkadia encouraged Magna to offer TableRock extensive price discounts, and later pushed Magna to sell two of the properties for a reduced price.

**ANSWER:**  The Magna Parties admit that Exhibit D is a true and accurate copy of the Arbitration Demand. Exhibit D speaks for itself and must be read in its

entirety. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of Exhibit D.

35.    Magna alleges that it learned through the discovery in its litigation with TableRock that Smith had an undisclosed dual agency and personal relationship with TableRock, had previously been an employee of TableRock, and still had a TableRock email. Magna also alleges that although it hired Smith and Berkadia to act as Magna's exclusive agent, Smith and Berkadia were actually working as an undisclosed dual agent for both Magna and TableRock. Magna alleges that Berkadia and Smith encouraged Magna to take actions that were not in its best interest, and which ultimately caused material damages to Magna.

**ANSWER:**    The Magna Parties admit that Exhibit D is a true and accurate copy of the Arbitration Demand. Exhibit D speaks for itself and must be read in its entirety. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of Exhibit D.

36.    Magna further asserts that it learned that Smith was obtaining an undisclosed financial interest from TableRock's purchase of the Indiana Properties, and obtained a finder's fee. Magna alleges that that documents obtained in the litigation listed Smith as an equity owner in the limited liability company that TableRock created to hold the Indiana Properties, and reflect a "finder's fee" paid to Smith by TableRock, which was evidenced in deposition testimony of TableRock's owner and by Smith's signature on the Operating Agreement for the TableRock holding company.

**ANSWER:**   The Magna Parties admit that Exhibit D is a true and accurate copy of the Arbitration Demand. Exhibit D speaks for itself and must be read in its entirety. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of Exhibit D.

37.    Magna alleges that Berkadia and Smith are liable for Breach of Contract, Fraud, Constructive Fraud, Breach of the Duty of Good Faith, Breach of the Duty to Disclose, Negligence, Failure to Disclose Dual Agency and Breaches of Real Estate Statutes.

**ANSWER:**   The Magna Parties admit that Exhibit D is a true and accurate copy of the Arbitration Demand. Exhibit D speaks for itself and must be read in its entirety. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of Exhibit D.

38.    Magna seeks disgorgement of fees, the loss of value of the remaining property that did not close, including increased expenses and repairs costs incurred to continue to operate those properties, losses associated with the inability to access the HUD reserve funds, insurance, and attorney's fees.

**ANSWER:**   The Magna Parties admit that Exhibit D is a true and accurate copy of the Arbitration Demand. Exhibit D speaks for itself and must be read in its entirety. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of Exhibit D.

39.    By letter dated August 9, 2024, Jonathan Smith, through his counsel, Kluever Law Group, tendered the Demand for defense and indemnity under the

Palomar Policy. By separate letters dated October 7, 2024, Palomar agreed to defend Berkadia and Smith, subject to a reservation of rights. True and accurate copies of the Reservation of Rights letters are attached hereto as Exhibit E.

**ANSWER:** The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

40.    Palomar contends it has no obligation to defend or indemnify Berkadia or Smith against the Magna Claim. Berkadia and Smith contend that Palomar has an obligation to defend and indemnify him against the claim. As a result, a present justiciable controversy exists regarding Palomar's rights and obligations, if any, with regard to these claims.

**ANSWER:** The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

## COUNT I

### (RESCISSION)

41.    Palomar adopts and incorporates by reference paragraphs 1-40 as though set forth herein as this paragraph 41.

**ANSWER:** The Magna Parties incorporate by reference their answers to the foregoing paragraphs as if fully set forth herein.

42.    On or after February 2, 2024, Berkadia submitted an application for insurance to Palomar.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

43.    Despite Berkadia's knowledge of all of the foregoing events and circumstances, Berkadia did not disclose them to Palomar in response to specific inquiries regarding any circumstances that might result in a claim being made against Berkadia or any of its past or present partners, directors, officers of employees, or any disputes regarding fees or compensation.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

44.    If Palomar was aware of these circumstances, Palomar would not have issued the same Policy to Berkadia. Accordingly, Palomar is entitled to rescind the policy of insurance it issued to Berkadia based upon material misrepresentations in the application.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

45.    Palomar agrees to tender the premium to Berkadia upon a judgment of rescission.

**ANSWER:** The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

## COUNT II

## (DECLARATORY JUDGMENT – INSURING AGREEMENT)

46.    Palomar adopts and incorporates by reference paragraphs 1- 45 as though set forth herein as this paragraph 46.

**ANSWER:** The Magna Parties incorporate by reference their answers to the foregoing paragraphs as if fully set forth herein.

47.    The Insuring Agreement of the Palomar Policy states that the insurance applies to a Claim first made and reported during the Policy Period only if, prior to the inception of the Policy, no Insured partners, principals, officers, directors, members, managing brokers or risk managers had a basis to believe that any circumstances, dispute, situation, or incident might reasonably be expected to be the basis of a Claim.

**ANSWER:** The Magna Parties state the Palomar Policy speaks for itself and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

48.    Prior to inception of the Palomar Policy, both Smith and Berkadia knew, inter alia, that:

    a.  Magna terminated Berkadia's services as its broker;

    b.  Magna believed that Berkadia and/or Smith were acting in favor of TableRock and not Magna;

    c.  TableRock and Magna were engaged in litigation with each other related to the real estate transactions;

    d.  Magna subpoenaed Berkadia's documents and communications related to the properties, transactions, and obtained seven hours of Smith's deposition testimony;

    e.  Magna contended that Smith had a prior undisclosed relationship with TableRock and had conflicting loyalties;

    f.  Magna contended that Smith obtained finders fees and equity interests in TableRocks' purchasing LLCs;

    g.  Smith denied any equity interest, but was presented with documents in his deposition evidencing an equity interest in two TableRock properties.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

49.    These and all of the foregoing constituted circumstances, a dispute, situation or incident that might reasonably be expected to be the basis of a Claim.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

50.    Accordingly, even assuming the Policy were not void, the Magna Claim is outside the scope of coverage provided by the Policy, and Palomar has no obligation to defend or indemnify any Insured against this Claim.

**ANSWER:**  The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

<u>**COUNT III**</u>

**(DECLARATORY JUDGMENT – SCOPE OF DAMAGES)**

51.    Palomar adopts and incorporates by reference paragraphs 1- 50 as though set forth herein as this paragraph 49.

**<u>ANSWER:</u>**   The Magna Parties incorporate by reference their answers to the foregoing paragraphs as if fully set forth herein.

52.    The Insuring Agreement of the Palomar Policy provides coverage only for those amounts the Insured becomes legally obligated to pay as "Damages" as a result of a covered claim. "Damages" do not include the return, restitution, reduction, compromise or refund of fees, commissions, expenses or costs for services performed or to be performed by an Insured, nor injuries that are a consequence of any fees, commissions, expenses or costs charged by an Insured;

**<u>ANSWER:</u>**   The Magna Parties state the Palomar Policy speaks for itself and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

53.    In the Arbitration Demand, Magna seeks a disgorgement of fees. Even assuming the Policy were not void, Palomar has no obligation to defend or indemnify any Insured for the return, restitution or refund of any fees or commissions, or disgorgement of fees.

**<u>ANSWER:</u>**   Denied.

## COUNT IV

## (EXCLUSION E)

54.     Palomar adopts and incorporates by reference paragraphs 1- 53 as though set forth herein as this paragraph 54.

**ANSWER:**   The Magna Parties incorporate by reference their answers to the foregoing paragraphs as if fully set forth herein.

55.     Pursuant to Exclusion E of the Palomar Policy, the Policy does not apply to any claims arising directly or indirectly out of any disputes involving an Insured's fees, commissions, charges or rebates, or the gaining of any profit or advantage to which any Insured is not legally entitled.

**ANSWER:**   The Magna Parties state the Palomar Policy speaks for itself and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

56.     Magna alleges that Smith improperly obtained an undisclosed financial interest and finder's fees for TableRock's purchases of the Indiana properties from Magna, and seeks a disgorgement of fees.

**ANSWER:** The Magna Parties state that their allegations, and the allegations of their affiliates, related to the TableRock Lawsuit and the Arbitration commenced by the Arbitration Demand (the "Arbitration Proceeding"), are fully set forth in the documents filed in the TableRock Lawsuit and in the Arbitration Proceeding. Such documents speak for themselves and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

57.     Accordingly, even if the Policy were not void and the claim were otherwise within the scope of the Insuring Agreement. The Claim is excluded in whole or in part by Exclusion E and Palomar can have no obligation to defend or Indemnify any Insured against the Magna Claim.

**ANSWER:**   The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

## COUNT V
## (EXCLUSION G)

58.     Palomar adopts and incorporates by reference paragraphs 1- 57 as though set forth herein as this paragraph 58.

**ANSWER:**   The Magna Parties incorporate by reference their answers to the foregoing paragraph as if fully set forth herein.

59.     Pursuant to Exclusion G of the Palomar Policy, the Policy does not apply to any claims arising directly or indirectly out of or in any way alleging the actual or attempted purchase of property owned by any entity in which any Insured had a financial or contemplated financial interest.

**ANSWER:**   The Magna Parties state the Palomar Policy speaks for itself and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

60.     Magna alleges that Smith was obtaining an undisclosed financial interest from TableRock's purchase of the Indiana Properties and obtained such

interest in the form of equity ownership in the TableRock entities created to purchase and hold the properties.

**ANSWER:** The Magna Parties state that their allegations, and the allegations of their affiliates, related to the TableRock Lawsuit and the Arbitration Proceeding, are fully set forth in the documents filed in the TableRock Lawsuit and in the Arbitration Proceeding. Such documents speak for themselves and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

61.    Accordingly, even if the Policy were not void and the claim were otherwise within the scope of the Insuring Agreement. The Claim is excluded in whole or in part by Exclusion G and Palomar can have no obligation to defend or Indemnify any Insured against the Magna Claim.

**ANSWER:** The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.S

## COUNT VI
### (EXCLUSION A)

62.    Palomar adopts and incorporates by reference paragraphs 1- 61 as though set forth herein as this paragraph 62.

**ANSWER:** The Magna Parties incorporate by reference their answers to the foregoing paragraphs as if fully set forth herein.

63.    Pursuant to Exclusion A of the Palomar Policy, Palomar has no obligation to indemnify any Insured for any claims arising directly or indirectly out

of any dishonest, intentionally wrongful, or fraudulent acts or omission allegedly committed by an Insured.

**ANSWER:**    The Magna Parties state the Palomar Policy speaks for itself and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

64.    Magna alleges that Smith and Berkadia were working as undisclosed dual agents, had an undisclosed prior relationship with TableRock, obtained an undisclosed financial interest in TableRock, and assert claims against them for fraud, constructive, breach of the duty of good faith, and failures to disclose. Accordingly, even if the Policy were not void and the claim were otherwise within the scope of the Insuring Agreement, all or part of the claim is excluded by Exclusion A.

**ANSWER:**    The Magna Parties state that their allegations, and the allegations of their affiliates, related to the TableRock Lawsuit and the Arbitration Proceeding, are fully set forth in the documents filed in the TableRock Lawsuit and in the Arbitration Proceeding. Such documents speak for themselves and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

## COUNT VII

### (REIMBURSEMENT OF DEFENSE COSTS)

65.    Palomar adopts and incorporates by reference paragraphs 1- 64 as though set forth herein as this paragraph 65.

**ANSWER:**    The Magna Parties incorporate by reference their answers to the foregoing paragraphs as if fully set forth herein.

66.     Section X. General Conditions (N) of the Palomar Policy contains the following provision:

**N. Reimbursement**

While the Company has no duty to do so, if the Company pays Damages and Claim Expenses:

(1)     within the amount of the applicable deductible, or

(2)     in excess of the applicable limit of liability, or

(3)     under a reservation of rights to seek reimbursement, and it is determined that the Company is entitled to such reimbursement,

All **Insureds** shall be jointly and severally liable to the **Company** for such amounts. Upon written demand, the **Insured** shall repay such amounts to the **Company** within thirty (30) days. Failure to pay any amount indicated may lead to termination of this Policy.

**ANSWER:**   The Magna Parties state the Palomar Policy speaks for itself and must be read as a whole. The Magna Parties deny that the foregoing paragraph is a full, complete, and accurate characterization of the same.

67.     By the reservation of rights correspondence dated October 7, 2024, Palomar agreed to pay the reasonable and necessary costs of independent counsel to defend Berkadia and Smith against the Magna Claim, subject to a full reservation of rights, including the right to seek reimbursement of any defense costs or expenses paid by Palomar.

**ANSWER:**   The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

68.    Accordingly, in the event this Court enters judgment in favor of Plaintiff with respect to its claim for rescission and/or declaratory relief, Plaintiff is entitled to reimbursement of any and all Claims Expenses paid by Palomar.

**ANSWER:**   The Magna Parties lack knowledge or information sufficient to form a belief about the truth of the allegations in the foregoing paragraph and therefore deny the same.

**WHEREFORE,** the Magna Parties pray the Court take nothing by way of Plaintiff's Complaint, and for all other relief the Court deems just and proper.

## AFFIRMATIVE AND OTHER DEFENSES

1.    Plaintiff has failed to state a claim for which relief can be granted.

2.    Plaintiff's claims are barred, in whole or in part, by the terms and conditions of the relevant policy of insurance.

3.    Plaintiff's claims are barred, in whole or in part, by the doctrine of unjust enrichment.

4.    Plaintiff's claims are barred, in whole or in part, by the doctrines of unclean hands, laches, and estoppel.

5.    Plaintiff's claims with respect to its duty to indemnify are not ripe, there is no justiciable case or controversy between the parties with respect to those claims, and this Court lacks subject matter jurisdiction with respect to those claims.

6.    The Magna Parties reserve the right to assert any other affirmative defenses that may arise at a later time.

Respectfully submitted,

**ICE MILLER LLP**

*/s/John D. French*
Nicholas B. Reuhs (#31181-49)
John D. French (#37629-53)
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100
Nick.Reuhs@icemiller.com
JD.French@icemiller.com

*Counsel for Defendants Magna*
*Properties, Inc., and Mike Abdalla*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2025, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Matthew J. Kowals
**LEAHY, EISENBERG & FRAENKEL, LTD.**
33 West Monroe Street, Suite 1100
Chicago, Illinois 60603
mjk@lefltd.com

                                                  */s/ John D. French*
                                                  John D. French

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN  46282-0200
Phone: (317) 236-2100
Fax: (317) 236-2219
Nick.Reuhs@icemiller.com
JD.French@icemiller.com